## ORIENTAL OIL CO. v. LINDSEY et al.
### No. 979.

Court of Civil Appeals of Texas. Waco.

Dec. 11, 1930.

Rehearing Denied Jan. 8, 1931.

J. Lee Zumwalt, of Dallas, for appellant.

Bryan, Maxwell & Dardnne, of Waco, for appellees.

STANFORD, J.

This suit was brought by appellant, a corporation, against B. B. Lindsey, V. A. Barnes, Dr. Knight, and ——— Moore, composing the Waco Oil Company, a partnership, upon a written contract by the terms of which appellant leased to appellee its warehouse, storage tank and motor driven pump on the Houston & Texas Central Railway Company right of way siding and a building located at 110 South Eighth street in Waco, Tex., with certain property therein, for a period of seventeen months, beginning May 1, 1922, for the total sum of $3,740, payable $220 per month in advance. Appellant alleged that appellees took possession of said leased property and paid one monthly installment of $220, and then abandoned said properties and refused to comply with said contract further; that appellant then to minimize its damages leased said properties for the unexpired term for the highest and best price obtainable, and by so doing, and after applying all rents received by it from appellees and others, left a deficiency or damage to appellant by reason of the breach by appellees of their said contract in the sum of $1,048.29, for which it asked judgment. Appellees answered by a general demurrer and general denial that they failed to get possession of the railway property, and that they had the right and did therefore cancel said lease because they could not get possession of the railway property without binding themselves to indemnify the railway company against damages, etc.

The case was tried before the court and judgment rendered for appellees. Appellant has duly appealed and presents the record here for review. Appellant contends, in effect, that appellees by their act of subleasing the property from appellant thereby became obligated and liable for all of the covenants

contained in the original lease from the Houston & Texas Central Railway Company to appellant, the same as if appellees had assumed the obligations of same. That the lease contract between appellant and appellees was severable, and, if the contract was not enforceable as to the warehouse, it was so as to the filling station. That appellees had possession of the filling station two months, and, in any event, appellant was entitled to recover rent on the filling station for one month. We will not attempt to consider appellant's contentions separately and in the order presented, but will consider all of them together. The record shows that the parties entered into a contract whereby appellant leased to appellees a filling station and equipment and also a certain warehouse to be used for storage purposes for a period of seventeen months, beginning May 1, 1922, at a monthly rental of $220 per month. The undisputed evidence is that, when the date for delivery of said property came, appellant delivered to appellees the filling station, and appellees went into possession of same, and at the same time paid appellant the May rent, $220, upon the whole properties involved according to the terms of the lease agreement. There is evidence that at that date appellees understood that the railroad property, being a large warehouse, was also delivered. That appellees discovered, so they testified, about ten days subsequent to the beginning of the lease contract, that the railroad properties had not been delivered, but that the Houston & Texas Central Railroad Company was prohibiting the appellees from using the same or any part thereof. Upon the discovery of such fact, so appellees testified, they communicated that fact to appellant's agent, and insisted that he procure for them the possession of the warehouse property, and that such agent stated he would see what he could do about it. This was the first intimation, so appellees testified, that they had that appellant had not delivered the warehouse property and could not deliver same. This condition existed approximately a month, appellees retaining the possession of the filling station and insisting upon the possession of the warehouse property. The testimony of appellee is that after about a month had expired appellees tendered back the property to appellant, and that same was by appellant accepted.

The record in this case discloses further that the appellant herein, as to said warehouse, was a lessee of the Houston & Texas Central Railroad Company; that after the execution of the lease between the appellant and appellees said Houston & Texas Central Railroad Company advised appellees that they would not be permitted to use the warehouse properties unless the appellees would execute an agreement with the Houston & Texas Central Railroad Company in conjunction with the Oriental Oil Company, wherein and whereby the appellees would assume all the terms and conditions of the lease between the appellant and the Houston & Texas Central Railroad Company. Appellees refused to execute this lease, and as a result thereof they could not secure possession of the warehouse property which had been leased to them by the Oriental Oil Company.

It will be seen from the above statement that this was a suit for rent for two pieces of property, one being a filling station and its equipment, possession of which was delivered to the appellees by appellant, and the other being a warehouse owned by the Houston & Texas Central Railroad Company, but held by appellant as lessee of said railroad company. Appellant leased both pieces of said property to appellees for $220 per month, and delivered the filling station at the time the lease began, but possession of the warehouse was refused appellees by the Houston & Texas Central Railroad Company, unless they also made a lease contract for the warehouse with the railway company, which contract, if same had been made, with the Houston & Texas Central Railway Company would have been much more burdensome to appellees than the one made by them with appellant. The Houston & Texas Central Railway Company having refused appellees permission to take possession of the warehouse unless they executed the more burdensome contract with said railway company, and appellant having refused to put appellees in possession of the warehouse as per their contract with appellant, appellees tendered all of said property back to appellant, and appellant accepted same.

■■ There is some evidence that appellees at the time they made the lease contract with appellant did not know that appellant was a tenant or lessee of the Houston & Texas Central Railway Company; however, if we assume that appellees knew that appellant, as to the warehouse, was a tenant or lessee of the Houston & Texas Central Railway Company, and further that they knew of the terms and conditions of appellant's lease with said railway company, we do not think appellees would be bound by the terms and conditions of appellant's lease with the Houston & Texas Central Railroad Company in the absence of an assumption on the part of appellees of the burdens and liabilities specified in the lease contract of appellant with the Houston & Texas Central Railway Company. Mere knowledge of the contract and the terms thereof would not render them liable thereon. Missouri, K. & T. Ry. Co. of Texas v. Keahy, 37 Tex. Civ. App. 330, 83 S. W. 1102, 1103 (writ refused); Ft. Worth Fair Ass'n v. Ft. Worth Driving Club, 56 Tex. Civ. App. 167, 121 S. W. 213; Doyle v. Scott et al. (Tex. Civ. App.) 134 S. W. 828.

In the first case above cited the court said:

"A subtenant is chargeable with knowledge of the terms of the lessee's lease. Such subtenant is not, however, liable to the owner upon the covenants contained in the contract between such owner and lessee, unless he has contracted to become so. Forrest v. Durnell, 86 Tex. 647, 26 S. W. 481."

In the case of Doyle v. Scott, supra, the court said: "It is true in the original lease it was expressly stated that the premises or any part thereof might be sublet. But this would not have the effect of making the subtenant liable to the original lessor on the lessee's covenants, nor the original lessor liable to the subtenant on the tenant's covenants. There is no privity of contract whatever between the original lessor and the subtenant; the consent to a subletting merely having the effect to waive the right of the original lessor to object to the subletting."

If appellees had signed the contract as requested by the Houston & Texas Central Railway Company, agreeing to assume all the burdens and liabilities then resting upon appellant by reason of the original lease contract between appellant and the Houston & Texas Central Railway Company, then appellees would have been equally liable with appellant for all the burdens and liabilities of appellant under said original contract. But appellees refused to sign said contract, as they had the right to do. Appellees and appellant had executed a lease contract satisfactory to all parties by which appellant had leased to appellees the filling station and the warehouse property and paid the first month's rent, and they were under no obligations to sign, together with appellant, another lease contract with the Houston & Texas Central Railway Company for the warehouse and thereby take upon themselves additional burdens, not contained in their lease contract with appellant. That said proposed lease contract with the Houston & Texas Central Railway Company would have been more burdensome than the one executed by appellees with appellant is apparent from the face of said contracts. That appellees had the right to refuse same, we think cannot be doubted; so the effect of appellant's acts in failing to deliver to appellees the warehouse amounted to a breach of its contract with appellees.

█ The record shows further that appellees bought and sold gasoline at wholesale as well as at retail at their filling station, and that their purpose in renting said warehouse was for storage of their gasoline bought in carload lots. There is also evidence that they could not have conducted their business at a profit without storage facilities, and that they would not have leased the filling station alone—that they would not have leased it at all, except for the fact they were also getting the warehouse. The lease appellees made with appellant covered both the filling station and warehouse for the total consideration of $220 per month. The lease contract was not a divisible contract, and, when appellant refused or was unable to deliver the warehouse as it had contracted to do, appellees had the right to treat said contract as terminated. Moore v. Mansfield, 182 Mass. 302, 65 N. E. 398, 94 Am. St. Rep. 657; Moore v. Trust Co., 173 Mo. 218, 73 S. W. 143, 145; Wolff v. Donohue (Sup.) 164 N. Y. S. 33; Penny v. Fellner, 6 Okl. 386, 50 P. 123; McClurg v. Price, 59 Pa. 420, 98 Am. Dec. 356.

█ Again the suit was upon a contract to recover rent in the sum of $220 per month for the two pieces of property—one piece the filling station, appellees occupied about two months, the other piece, the warehouse, was never delivered. Appellees paid $220, which covered the warehouse which was never delivered to them, as well as the filling station which was delivered, and there was no pleading nor evidence that would authorize the court, if such could be done at all under the contract, to say what was the proper amount of rent for the filling station alone. However, we think, under the authorities last above cited, the contract not being severable, that appellant, having breached its contract by failing to deliver the warehouse, was not entitled to recover any rent for the filling station.

We have considered all of appellant's assignments and find no reversible error.

The judgment is affirmed.